Filed 2/5/14  P. v. Alexander CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B243170 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA069032) |
| v. | |
| STEVEN EUGENE ALEXANDER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shari K. Silver, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Steven Alexander appeals from the judgment entered following his convictions by jury on two counts of first degree burglary with a person present (Pen. Code, §§ 459, 667.5, subd. (c)(21); counts 1 & 2), for battery with injury on a peace officer (Pen. Code, § 243, subd. (c)(2); count 3), on three counts of resisting an executive officer (Pen. Code, § 69; counts 4 - 6), and on count 7 - second degree burglary (Pen. Code, § 459), with admissions he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)) and served four prison terms (Pen. Code, § 667.5, subd. (b)). The court sentenced appellant to prison for 25 years 4 months. We affirm the judgment.

## FACTUAL SUMMARY

1. *The Burglaries (Counts 1, 2, & 7).*

   a. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence, the sufficiency of which is undisputed except as to counts 1 and 2, established as follows. On August 24, 2010, Paxton Starksen (Paxton) and Ellen Starksen (Ellen) lived in their home in the 9800 block of La Canada Way in Los Angeles County. On that date, Ellen watered her backyard but did not see a cell phone there. About 2:00 a.m. on August 25, 2010, Paxton awoke in his living room and saw a male burglar less than two feet from him (count 1). The burglar, having stolen items from the house, fled out the sliding glass door at the back of the house.

On August 27, 2010, Los Angeles Police Detective Edward Dorroh and Paxton were in Paxton's backyard when Dorroh found appellant's cell phone there. The cell phone was clean, indicating it had been recently left there. At trial, Paxton testified the burglar had an average height and build, was about five feet nine inches tall. Paxton identified appellant at trial as having the general height and build of the burglar.

The Metro PCS account pertaining to appellant's cell phone was activated on July 23, 2010. Jermie Skidmore, appellant's parole agent, testified that on July 26, 2010, appellant gave appellant's cell phone number as appellant's main phone number. Appellant never reported to any parole agent that appellant's cell phone had been stolen.

2

On October 28, 2010, Margarete Allen lived in her home on Ledeen Drive in Los Angeles County. That night, the sliding glass door of her living room was closed. Later, between 11:30 p.m. on October 28, 2010, and about 7:30 a.m. on October 29, 2010, someone burglarized her home while she slept (count 2). The burglar stole property belonging to Allen, including her Chase credit card. When Allen awoke, she found the sliding glass door open. The driving distance between the Starksen and Allen residences was about three and a half miles.

About 5:00 a.m. on October 29, 2010, appellant went to the home of an acquaintance, Debra DeSantis, asked her to use a credit card (later identified as Allen's Chase card) to buy items, and DeSantis agreed to do so. Later that morning, appellant gave the Chase card to DeSantis. About 5:42 a.m. on October 29, 2010, appellant burglarized the 7-Eleven store on Foothill in Sunland (count 7). That is, he and DeSantis entered the store, intending to use the Chase card to fraudulently buy items inside. After the two entered, they used the card as planned. DeSantis's home was near the 7-Eleven. The driving distance between the Allen residence and the 7-Eleven was about two miles.

b. *Defense Evidence*.

In defense, appellant denied that on August 25, 2010, he entered the Starksen home with intent to steal, and denied that on October 29, 2010, he entered the Allen home with intent to steal. Appellant had suffered a 1998 burglary conviction, 2005 and 2009 receiving stolen property convictions, and 2006 and 2007 convictions for unlawful taking of a vehicle.[1]

Appellant obtained his cell phone from Metro PCS. His cell phone was stolen between July 23 and July 26, 2010. On July 26, 2010, appellant reported to Skidmore the cell phone had been stolen. Appellant did not report to Metro PCS or to the police the cell phone had been stolen.

---

[1]    Although we specify appellant's prior convictions in the context of the defense evidence as to counts 1, 2, and 7, the admissibility of those prior convictions as impeachment evidence was not limited to those counts.

2. *The November 23, 2010 Resisting Offenses (Counts 5 & 6).*

    a. *People's Evidence.*

A few days before November 23, 2010, Los Angeles Police Officers Ruben Aguirre and Casey Sbabo, partners, received information appellant was wanted for residential burglaries. About 5:00 p.m. on November 23, 2010, Aguirre and Sbabo were on Whitegate, south of Ellenbogen, when they saw and approached appellant. Aguirre was wearing his department raid jacket. The words "Los Angeles Police Department" were on the jacket sleeves, the word "police" was on the front and back of the jacket, and a badge symbol was on the front of the jacket. Aguirre was wearing his department-issued equipment belt, and his badge was clipped to the front of his pants. Sbabo was similarly dressed except Sbabo was wearing his badge on a necklace chain with the badge in front of his chest.

Sbabo told appellant to stop and that Sbabo needed to speak with him. Appellant complied. Sbabo told appellant to turn around and place his hands behind his back, and appellant complied. While conducting a patdown search, Sbabo felt a pipe, told appellant it was no big deal, but told appellant that Sbabo was briefly going to put handcuffs on appellant. When Sbabo held appellant's hands and tried to place handcuffs on them, appellant violently pulled away and fled. The officers chased and apprehended appellant. However, appellant fought them while they yelled at him to stop fighting and resisting. (Counts 5 and 6 as to Sbabo and Aguirre, respectively.) Appellant eventually broke free and escaped.

Jesse Eubanks testified as follows. About 5:00 p.m. on November 23, 2010, Eubanks was on Whitegate near Ellenbogen when he saw two officers wearing plain clothes with the word "police" written on them. Eubanks identified them as police because of their clothes, visible badges, and guns. Eubanks saw the officers approach appellant and ask to speak with him, and Eubanks saw an officer conduct a patdown search of appellant. Once appellant's hands were grabbed, appellant and the officers fought.

4

b. *Defense Evidence*.

In defense, appellant testified that on November 23, 2010, he was on parole. He did not improperly resist being taken into custody. Appellant did not know Aguirre was a police officer. Appellant did not see the word "police" on Aguirre's jacket and did not see the badge symbol on the front of the jacket. Appellant did not see Sbabo's badge. At one point, appellant resisted because Sbabo and Aguirre were hurting appellant.

3. *The November 26, 2010 Offenses (Counts 3 & 4)*.

a. *People's Evidence*.

On November 26, 2010, Aguirre was with his partner, Los Angeles Police Officer Rodolfo Rocha. Both were wearing department-issued clothing identifying them as police officers, like the clothing Aguirre had worn on November 23, 2010. Aguirre and Rocha saw appellant tying his shoes on a sidewalk at Woodward and Wentworth. The officers exited their car and approached appellant. Aguirre ordered appellant to turn around and lie prone. Appellant jumped up and tried to flee.

Aguirre and Rocha tackled appellant. Rocha told appellant they were police officers and appellant was under arrest, but appellant violently resisted. Appellant was able to stand a few times, but the officers kept knocking him down. Appellant swung his elbows, trying to keep away from the officers. The officers continued yelling at appellant to stop fighting and resisting. (Count 4, as to victim Rocha.) Aguirre yelled to Ara Malakian, who had driven up in his car, to call 911. Additional officers arrived and helped place appellant in handcuffs. Malakian testified the officers held appellant down, commanding appellant to stop moving. As a result of the struggle with appellant, Aguirre sustained cuts and scrapes all over his legs and elbows, and Aguirre strained his chest muscle. (Count 3, as to victim Aguirre.)

5

b. *Defense Evidence*.

In defense, appellant testified that on November 26, 2010, he did not improperly resist officers and did not batter them. Joe Ann Troy testified that in November 2010, she saw the following. Appellant and two police officers were in front of Troy's house. Troy did not know the two were police officers until she saw the back of their jackets. Appellant was on the ground, one officer was straddling him, and appellant's hands were behind his back. The officer straddling appellant was repeatedly hitting him. Appellant was screaming for help and for someone to call 911.

b. *Rebuttal Evidence*.

On November 26, 2010, Isabel Barron was at Woodward and Wentworth when she saw two officers on the ground trying to arrest appellant. Appellant was resisting arrest, fighting, and kicking. Barron saw other officers arrive and help place appellant in handcuffs. On November 26, 2010, Mark Greisen was near the above intersection. Greisen testified it was obvious two officers were trying to subdue a person. Greisen saw the person get away briefly and flee, but an officer again apprehended the person. The person continued to fight the officers violently. Greisen saw an officer use his fist to hit the person once on the head with no apparent effect. Additional police arrived and placed the person in handcuffs. On November 26, 2010, Los Angeles Police Sergeant Michael Smith spoke with Troy. Troy told Smith that appellant was uncooperative with officers, appellant was only wanted for warrants, and police had the wrong man.

## ISSUES

Appellant claims (1) there is insufficient evidence supporting his convictions on counts 1 and 2 and (2) the trial court erred by admitting other crimes evidence. Appellant also asks this court to conduct an independent review of the in camera hearings on his *Pitchess* motions.

6

## DISCUSSION

1. *Sufficient Evidence Supported Appellant's Convictions on Counts 1 and 2.*

Appellant concedes the Starksen home was burglarized but claims there is insufficient evidence he was the burglar. We reject the claim. There was substantial evidence from the People's evidence as follows. The burglar of the Starksen home fled out the sliding glass door at the back of the house. A few days later, appellant's cell phone was found in the Starksen's backyard. The cell phone had been left there recently. Skidmore denied appellant had reported to him that the cell phone had been stolen. The jury reasonably could have concluded beyond a reasonable doubt appellant inadvertently left his cell phone in the backyard when the burglary of the Starksen's home occurred. Paxton identified appellant at trial as having the general height and build of the burglar.

Moreover, although appellant claimed his cell phone was stolen, appellant provided no foundation as to where, or in what circumstances, the alleged theft occurred other than the dates during which it allegedly occurred. He testified he did not report to Metro PCS, or to police, that his cell phone had been stolen. The jury reasonably could have concluded appellant's testimony his cell phone was stolen and he reported to Skidmore that it had been stolen was self-serving, fabricated (especially in light of appellant's impeaching prior felony convictions), and evidence of consciousness of guilt. In sum, the jury reasonably could have concluded beyond a reasonable doubt appellant was the burglar of the Starksen residence. (Cf. *Ochoa*, *supra*, 6 Cal.4th at p. 1206.)

Appellant concedes the Allen home was burglarized but claims there is insufficient evidence he was the burglar. We reject that claim as well. There was substantial evidence from the People's evidence as follows. The burglar of the Allen home exited through the sliding glass door of the living room and stole, inter alia, Allen's Chase credit card. There is no dispute as to the sufficiency of the evidence appellant burglarized the 7-Eleven store (count 7) so DeSantis could use Allen's Chase card to fraudulently buy items in the store. The Allen burglary occurred late on October 28, 2010, or in the early morning on October 29, 2010, appellant gave Allen's Chase card to

7

DeSantis, and the 7-Eleven burglary occurred later during the early morning of October 29, 2010.

Conscious possession of property recently stolen during a burglary, plus slight evidence of a defendant's guilt, is sufficient evidence to support a defendant's conviction for the burglary. (See *People v. Gamache* (2010) 48 Cal.4th 347, 374, fn. 12, 375.) Appellant concedes he possessed the stolen Chase card. Indeed, there was substantial evidence he consciously possessed the recently stolen card.

Moreover, appellant possessed the Chase card during the early morning hours of October 29, 2010, he possessed it only a few hours after it had been stolen from Allen's house earlier that same night, and the card bore a woman's name. These facts reduced the likelihood appellant innocently obtained the card from a third party. Appellant gave the card to DeSantis so she could fraudulently buy items from the 7-Eleven. Later during the early morning of October 29, 2010, appellant burglarized the 7-Eleven, and appellant and DeSantis used the card to fraudulently buy items. The distance between Allen's residence and the 7-Eleven was about two miles. In sum, the jury reasonably could have concluded beyond a reasonable doubt appellant was the burglar of the Allen residence. (Cf. *Ochoa*, *supra*, 6 Cal.4th at p. 1206.)

We also note the Starksen and Allen homes were relatively near to each other and to the 7-Eleven in Sunland, and the burglar of each home committed a nighttime burglary and exited the sliding glass door of the home. These facts further support the sufficiency of the evidence underlying appellant's convictions on counts 1 and 2.

2. *The Court Did Not Erroneously Admit Other Crimes Evidence*.

    a. *Pertinent Facts*.

        (1) *Appellant's Testimony*.

During cross-examination, appellant testified to the effect that on November 23, 2010, he was a parolee and subject to a patdown search by law enforcement personnel who announced who they were. The prosecutor asked if appellant would have submitted

8

to a search on November 23, 2010, if the police had announced who they were, and appellant replied yes.

(2) *The Admissibility Hearing*.

Outside the presence of the jury, the prosecutor proffered evidence that in May 2010, appellant resisted being arrested by a police officer. The prosecutor represented as follows. In May 2010, Glendale Police Officer Guillermo Jimenez recognized appellant as a parolee. Jimenez called appellant twice by name, but appellant ignored him. Jimenez approached appellant and asked for his identification. Appellant handed identification to Jimenez. Jimenez asked for consent to search appellant's pockets and appellant consented. Jimenez found a substance he believed was methamphetamine on appellant.

Jimenez showed the baggy (apparently containing the methamphetamine) to appellant, tried to place handcuffs on appellant, but appellant resisted. Appellant later told Jimenez that appellant understood as a parolee he had to submit to a search and seizure by any law enforcement officer at any time, and appellant had resisted only because he wanted to know why Jimenez was going to place him in handcuffs.

The prosecutor argued evidence of the May 2010 incident impeached appellant's trial testimony he would have submitted to a search on November 23, 2010, if police had announced who they were. The prosecutor also argued the evidence was admissible under Evidence Code section 1101, subdivision (b) on the issues of motive, knowledge, and intent in the present case. The prosecutor noted appellant was testifying in the present case he did not know the officers were officers. The prosecutor further argued the evidence was admissible to prove appellant's use of force in the present case.

Appellant argued that the testimony the prosecutor sought to impeach--that appellant would have submitted to a search on November 23, 2010, if police had announced who they were--was elicited during cross-examination by the prosecutor; therefore, appellant had not opened the door to the impeachment. Appellant also argued the May 2010 incident differed from the November 23, 2010 incident because the police

9

report as to the May 2010 incident indicated Jimenez was in full uniform, while appellant was claiming as to the November 23, 2010 incident he did not know the officers were officers.

After argument, the court indicated appellant had been testifying to the effect he was a law-abiding citizen, knew he was on parole, but did not recognize the officers were officers, even though a photograph clearly depicted them wearing badges in front. The court stated, "The evidence that the People intend to cross-examine [appellant] on clearly is impeachment of [appellant's] testimony here in court, and also goes to the issue of his past acts involving resisting arrest."

The court also indicated as follows. Evidence appellant possessed methamphetamine would be excluded, but Jimenez's testimony, limited to the issues of Jimenez's efforts to place handcuffs on appellant and appellant's resisting, would be relatively short. Evidence Code section 352 was concerned with prejudice arising from other crimes evidence when the other crime was unrelated to the present offense and stigma associated with the other crime would cause the jury to react unfavorably towards the defendant. The court later stated, "Here we're talking about a prior incident very close in time, not remote, with similarities. Furthermore, all of [appellant's] prior felony convictions are going to be brought out. So in terms of prejudice, the court just does not see any prejudice in this case. And for those reasons, the court will allow the cross-examination under the parameters that I've indicated."

(3) *Additional Testimony by Appellant*.

Later during cross-examination, appellant denied remembering what Jimenez had been wearing, denied knowing Jimenez was a police officer, and denied resisting Jimenez. Appellant testified he tensed up when Jimenez grabbed his wrists. (Jimenez did not testify at trial.)

10

(4) *Jury Instructions*.

The court gave a modified CALCRIM No. 375, that stated the jury could consider other crimes evidence only for the limited purposes of deciding whether "[appellant] knew the executive officers (Ruben Aguirre, Casey Sbabo, and/or Rodolfo Rocha) were performing their lawful duties" and whether appellant "had a plan or scheme to commit the offenses alleged in this case."

The instruction also stated, "In evaluating this evidence, consider the similarity or lack of similarity between the uncharged act and the charged offenses. [¶] Do not consider this evidence for any other purpose except as defined in this instruction and for the limited purpose of determining [appellant's] credibility. [¶] Do not conclude from this evidence that [appellant] has a bad character or is disposed to commit crime."[2]

b. *Analysis*.

Appellant claims the trial court erred by admitting the other crimes evidence of the May 2010 incident. He argues the trial court abused its discretion by not excluding evidence of the incident under Evidence Code section 352, resulting in a violation of appellant's rights to due process and a fair trial. We reject the claim.

We evaluate a trial court's ruling under Evidence Code section 352 for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 723-724). Penal Code section 69, states in relevant part, "Every person . . . who knowingly resists, by the use of force or violence, [an executive] . . . officer, in the performance of his duty, is punishable . . . ." The offense requires that the defendant know that the officer is an officer and that the officer is performing the officer's duties. (Cf. *People v. Hendrix* (2013) 214 Cal.App.4th 216, 237 (*Hendrix*).)

---

[2]    The instruction also stated, "If you conclude that [appellant] committed the uncharged act, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that [appellant] is guilty of resisting an executive officer in performance of duty in violation of Penal Code section 69 (Counts 4, 5, 6) . . . . The People must still prove each charge beyond a reasonable doubt."

11

According to the prosecutor's proffer, in May 2010, Jimenez, a police officer, requested identification from appellant and consent to search him. Appellant, a parolee, complied with Jimenez's requests. Jimenez searched appellant and found methamphetamine. These facts indicate Jimenez was a police officer lawfully performing his investigatory duties and appellant knew this and complied with Jimenez's investigative requests. Appellant resisted only when Jimenez began placing handcuffs on appellant. The proffered facts indicate Jimenez was a police officer lawfully performing the duty of arresting appellant for methamphetamine possession and appellant, knowing these facts, resisted arrest.

The trial court, when ruling, already had heard the People's trial testimony concerning the November 23, 2010 incident involving Sbabo and Aguirre. That testimony revealed during the November 23, 2010 incident, appellant complied with multiple investigative requests of Sbabo. Appellant resisted only when Sbabo discovered appellant possessed a pipe and told appellant that Sbabo was going to place handcuffs on him.

Because of the similarities between the May 2010 and November 23, 2010 incidents, the May 2010 incident was highly probative on the issue of appellant's knowledge Sbabo and Aguirre were police officers lawfully performing their duties, an issue placed in dispute by, inter alia, appellant's testimony. Moreover, in light of the prosecutor's proffered facts, the May 2010 incident occurred just months before, and was not more inflammatory than, the November 23, 2010 incident. Jimenez would have been a source of testimony independent of Sbabo or Aguirre.

Further, the trial court gave a limiting instruction telling the jury it could consider the other crimes evidence on the issue, inter alia, appellant knew executive officers Aguirre and Sbabo were performing their lawful duties. The instruction told the jury to consider the similarity or lack of similarity between the uncharged act and the charged offenses, to consider the uncharged act for other limited purposes, and not to consider the uncharged act as propensity evidence or evidence of appellant's bad character. We

12

conclude the trial court did not abuse its discretion under Evidence Code section 352 by ruling evidence of the May 2010 incident was admissible to prove appellant recognized the officers were officers, i.e., to prove appellant knew Aguirre and Sbabo were executive officers performing their duties.[3] (See *People v. Williams* (1997) 16 Cal.4th 153, 213; *People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)[4] Nor did the ruling violate appellant's right to due process or right to a fair trial.

Even if the trial court abused its discretion, however, it does not follow we must reverse the judgment. Based on the prosecutor's proffer, appellant was a parolee, and we have already discussed the similarities of the May 2010 and November 23, 2010

---

[3] In light of our analysis, we need not decide whether the trial court's admissibility ruling was proper on any other ground.

[4] Appellant's reliance on *Hendrix* is misplaced. In *Hendrix*, a divided court held evidence of prior instances of resisting police was inadmissible to prove knowledge, or absence of mistake, in connection with the defendant's current prosecution for a violation of Penal Code section 69 (*Hendrix*, *supra,* 214 Cal.App.4th. at pp. 220, 225) because the proffered evidence lacked probative value and Evidence Code section 352 compelled exclusion of the evidence (*Hendrix*, at pp. 244-248). In *Hendrix*, the defendant claimed he did not know the person whom the defendant was resisting was a police officer performing his duties. The defendant also claimed he believed (erroneously) *the person whom the defendant was resisting was a security guard* dressed and equipped like a police officer (*id.* at pp. 224, 243), and the defendant presented significant facts to support that claim. That claim raised the issue of mistake (i.e., the defendant's erroneous belief) thus putting the burden on the People to prove the absence of mistake. However, appellant does not claim he believed any persons whom appellant was resisting were security guards, but simply claims he did not believe they were *police officers*, even though they were dressed and equipped like officers, although they were not in full uniform. Moreover, in *Hendrix*, the two prior incidents were 16 years old and five years old, respectively, unlike the six-month-old May 2010 incident in the present case. Further, *Hendrix* concluded "[t]he trial court erred by not considering similarity . . . ." (*Id.* at p. 239.) However, in the present case, the trial court, during its Evidence Code section 352 analysis, expressly discussed the fact of similarities between the May 2010 incident and the present offenses. Finally, in *Hendrix*, the trial court admitted into evidence various irrelevant and inflammatory threats the defendant made after the 2005 resisting incident at issue in that case (*Hendrix*, at pp. 222, 225-226, 234-235, 239, 245-246) and these "helped tip the section 352 scales" (*Id.* at p. 234) against the People. No similar evidence was admitted in the present case.

incidents.  Evidence of the May 2010 incident was also admissible on the issues of motive, intent, and common plan, i.e., as a parolee, appellant would cooperate with police until police found him in possession of contraband that could result in a violation of his parole, at which time appellant would resist arrest.

Jimenez never testified, i.e., all the jury essentially heard as to May 2010 incident was appellant's defense-favorable testimony he did not remember what Jimenez had been wearing, did not know Jimenez was a police officer, and did not resist him.  Appellant's testimony was substantially impeached by his several prior felony convictions.  Our Factual Summary demonstrates there was ample evidence appellant committed the offenses at issue in counts 4 through 6 even absent evidence of the May 2010 incident.  Even if the trial court abused its discretion by admitting the other crimes evidence, that error was not prejudicial.  (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836.)

3. *The Trial Court Fulfilled Its Responsibilities Under Pitchess.*

The nonconfidential record reflects as follows.  On January 14, 2011, appellant filed a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), seeking various information in the personnel files of specified Los Angeles police officers.  At the February 17, 2011 hearing on the motion, the trial court granted it as to any complaints regarding false statements or fabrications by Aguirre or Rocha within the last five years, and as to any complaints regarding excessive force by Aguirre, Rocha, or Sbabo within the last five years.  On February 17, 2011, the court conducted an in camera *Pitchess* hearing and ordered sealed the transcript thereof.  Following the in camera hearing, the court stated it had ordered production of certain materials.

14

The reporter's transcript reflects on April 14, 2011, appellant filed a supplemental *Pitchess* motion as to Dorroh.[5]  At the May 5, 2011 hearing on the motion, the trial court granted the motion to the extent of complaints regarding false statements by Dorroh within the last five years.  That same day, the court conducted an in camera *Pitchess* hearing and ordered sealed the transcript thereof.  Following the in camera hearing, the court stated there were no responsive documents.

Appellant claims this court should review the sealed transcripts of the February 17, 2011 and May 5, 2011 in camera *Pitchess* hearings to determine whether any police personnel records were erroneously withheld.  Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 827; *People v. Memro* (1995) 11 Cal.4th 786, 832.) We have reviewed the contents of the sealed transcripts of the February 17, 2011, and May 5, 2011, in camera *Pitchess* hearings.  The transcripts constitute an adequate record of the trial court's review of any document(s) provided to the trial court during the in camera hearings, and said transcripts fail to demonstrate the trial court abused its discretion by failing to disclose any additional information.  (Cf. *Samayoa*, at p. 827; see *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230, 1232.)  The trial court fulfilled its responsibilities under *Pitchess*.

---

[5]    The written motion filed on April 14, 2011, is not part of the record before this court.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


KLEIN, P. J.


ALDRICH, J.